Our second case for this morning is Kleber v. CareFusion Corporation. We'll begin with Ms. Smith. Good morning, Your Honors, and may it please the Court. I'm Dara Smith and I represent the appellant Dale Kleber. The issue before the Court today is critically important, but the answer is clear. The Supreme Court has spoken to every salient part of this issue, and those rulings inexorably lead to the conclusion that external job applicants can bring disparate impact claims under the ADA. To begin with, the Supreme Court has said that this exact language that's at issue here covers disparate impact claims in employment in or transfer to positions. Second, in Smith, the Supreme Court ruled that that exact language created a disparate impact claim under the ADEA. Third, the Supreme Court referred to two hiring cases as appropriate disparate impact cases in Smith. Fourth, the Supreme Court has repeatedly said that the ADEA was enacted primarily to eliminate hiring discrimination on the basis of age. And finally, according to Justice Scalia, the regulations in this case are an absolutely classic case. I thought you were speaking for the Court. I'm sorry, Your Honor. I assumed that Scalia was speaking for the Supreme Court, not for himself. Your Honor, that wasn't Justice Scalia's concurrence in Smith, however... I'm just pulling your leg. Of course, Your Honor. Yes, it was in his concurrence. We all know that, so thank you. That's correct. And so, consequently, we're not on a blank slate today. Any indication that the text should be examined in a vacuum doesn't make any sense, given the number of times and the extent to which the Supreme Court has already dealt with so many of the issues in this case. But logically, why wouldn't Congress have expressly included applicants for employment in Section 623A as it did in other provisions? Your Honor, I'm not exactly sure why Congress wrote the statute the way that it did, but it wrote Title VII the exact same way. And when it enacted the ADEA, it incorporated the provisions of Title VII in Huck-ver-beth. And so, given how clear it is that Congress intended to and did include applicants in the original version of Title VII, it did so under the ADEA as well. So, there are other provisions that mention applicants, but that wasn't important to the Griggs Court when it interpreted 703A-2. There was an exact parallel to the provisions of 703C-2, where the labor organization provision that included applicants was worded exactly as 4C-2 is. I'm wondering why you have rested your claim on Section 623A-2, which speaks about employees, rather than Section 623A-1, which covers anyone who fails or refuses to hire any individual. Could you explain why this isn't a 623A-1 case? Certainly, Your Honor. The Supreme Court in Smith said that the disparate impact provision of the ADEA rested in Section 4A-2, not in Section 4A-1. And so that… If you think that Smith establishes that 623A-1 does not entail disparate impact analysis, doesn't that mean it would be inappropriate to defeat that through the back door by reading A-2 to include, well, all people covered by A-1? No, Your Honor, because Section 4A-2 covers different practices than Section… Let's talk about the numerals in the U.S. Code. Oh, certainly, Your Honor. That's also something that Justice Scalia was very much in favor of. Certainly. I'd be happy to. Your argument is that the word employees in A-2 should be construed to include applicants. And viewed in the abstract, that might be fine. But if what's going on is that 623A-1 does include applicants, and the Supreme Court has held that A-1 does not permit disparate impact liability, it sounds like the nature of your argument is we would like you to avoid that holding indirectly. Is that a sensible thing for a court to do? No, Your Honor, but that's not exactly what we're saying. There are numbers… So why don't you rely on 623A-1? I would love to, Your Honor, but the Supreme Court has said that we can't. Let me ask you whether the dilemma that Judge Easterbrook is talking about exists. I thought that you were arguing that the actions addressed in A-2, 623A-2, if you will, of limiting, segregating, or classifying employees, then get applied to any individual who might be deprived of employment opportunities. And individual isn't the same word as employee. It doesn't say which would deprive or tend to deprive any employee of employment opportunities. It says any individual. And so I thought that was one point. And I thought another point you were making was that the term employee itself is ambiguous. There are places, certainly under Robinson, for example, where the term employee is understood to mean, parentheses, current, close parentheses, employees, and parentheses, former, close parentheses, employees. And you seem to be saying there's a third adjective, prospective, that sometimes the statute includes. All of that is exactly what our argument is. Any individual is the unit of analysis here, and that's why the court doesn't have to conclude that employees encompasses applicants. It can, and I think that that's a reasonable interpretation under Robinson, as you've indicated, Your Honor. But first and foremost, the reference to any individual is the broader noun, and also the because of such individuals' age at the end of the provision is critical, too. That would have been another opportunity for Congress to say because of such employees' age, and it didn't if it meant to limit it to employees in some meaningful way. Let me also ask you, the scope of A-1 is quite different. A-1 is an intentional discrimination standard. And I gather you're, for the time being, saying that there's no intentional discrimination pointed at any person if you say we don't want people with more than seven years' experience. Is not A-2 also subject to some defenses that are not available in A-1? So I'm just trying to say you're not getting the same package of rights from A-2 that you would get from A-1. That's exactly right. A-2 forbids a different set of practices, and I do want to clarify that there was a disparate treatment intentional discrimination claim in this case, and it's been settled. So that's not an issue today. So a practice that has a disparate impact can also be intentionally discriminatory. Oh, sorry. But the main issue here is that limiting, segregating, or classifying employees in a way which deprives or tends to deprive any individual of employment opportunities, et cetera, is a different set of practices than is covered in A-1. And the fact that A-1 specifically refers to hiring, compensation, any number of specific other practices doesn't mean that none of those practices could be covered in A-2 or that none of the people in particular that are covered in A-1 could be covered in A-2 because that simply doesn't make any sense. So remind me, people are using letters, which get me confused, but is there not a defense under the age statute for the disparate impact theory of the employer being able to say, I used a reasonable factor other than age, which I fear that people are calling an RFOA. But that will not be the way to win Judge Easterbrook's vote. If this case depends on RFOAs, I'm going to recuse myself. But anyway, there is no RFOA or reasonable factor other than age defense to A-1, right? That's right, Your Honor. The reasonableness defense, let's call it that if that's a little more sensible, is the ADEA's equivalent of the business necessity defense under Title VII for disparate impact. Don't you concede it allows for more employer flexibility? Absolutely. The Supreme Court has said as much and made that very clear. The employer doesn't have to take the least discriminatory alternative. Reasonableness isn't the same as necessity. It's a much more lenient standard for employers, and the Supreme Court has made that very clear. What about the parade of horribles that the amicus raises? Do you think that if an employer said, we wish to entertain applicants only who are within five years of graduating from college, because we think that you're most in touch with the latest theories, that your training is fresh, you're going to be on top of things, would that be a reasonable factor other than age? Or does your theory say that henceforth that kind of targeting campus recruiting, which the amicus on the other side was also concerned about? Your Honor, it's difficult to say without any evidence or any specific context whether any particular limitation like that would be reasonable. But that's their hypothetical, so I'm interested in your answer to their hypothetical. I think as a preliminary matter, and Judge Martin said this in her dissent in the 11th Circuit decision on this, that campus recruiting as a method of getting employees is not at all at risk. It's simply not. So that's reasonable. In other words, to say we're going to go to campuses, but we're not going to go to old folks' homes would be reasonable in your view. I think that there is absolutely no dispute among anyone, certainly not coming from us, that recruiting on college campuses is a reasonable thing to do. There is a difference if a company were to exclusively recruit on college campuses and say you have to be affiliated with a campus, you have to be affiliated with a university, there's no other way to get this job. Then you have a different story. But no one is saying that college recruiting or campus recruiting itself is unreasonable. That doesn't even make any sense. Well, the Chamber of Commerce is afraid that the consequence of your theory might make people start to think that it is. And so I take it you're saying that it can be one of a number of things as long as maybe they post on Monster or they do something else. I think that's exactly right, Your Honor. And I also think that when it becomes clearer and more subtle that this is the law, that the case law will pretty quickly establish what's reasonable and what's not so that they don't have to be afraid that they'll have to extensively litigate this issue every single time that a case is brought and that it's going to just give rise to this flood of litigation. The other thing that I want to note is that many states have age discrimination laws, and particularly California has a disparate impact provision that has the business necessity standard. So there are already very large employers that have to contend with disparate impact now, and they haven't stopped recruiting on campuses. They haven't stopped being able to recruit on campuses. It just hasn't been a problem. Another reason to believe that that's not an issue is before the Supreme Court's case in paper decision, it was regularly accepted that there was a theory of disparate impact for job applicants, and campus recruiting went on then as well. It simply wasn't a problem, and there's no reason to expect that it will be. Now, if employers decide that they're going to put hard experience caps, like the one at issue in this case, they're going to have to explain why that makes sense. It's not a heavy burden for them to have to do that. It certainly doesn't mean that they won't be able to. But what about this employer's explanation then? This employer says, you know, if we have somebody with the credentials of Mr. Kleber, is he really going to want a 30-year-old ordering him around in the general counsel's office? As a preliminary matter, I do want to note that that hasn't been— whether that's actually sufficient on the merits to meet the reasonableness standard hasn't been litigated at all in this case. There's not evidence in the record about it. The parties haven't had a chance to fully address it. So you're just saying that's a down-the-road point. Yes, exactly. I mean, clearly we brought this case because we believe that it's not reasonable, but that has yet to be litigated. And the problem is if Mr. Kleber can't even bring his claim and can't get in the door, he won't even have a chance to argue why it's unreasonable. The defendants don't even have to present that. And so really preventing people from having this claim only protects unreasonable practices. And that's the real issue here. It's sort of a novel approach, but do you ever think of going to Congress to have it amended? Congress is free to amend the statute at any time, but it doesn't need to do so. And one of the reasons that we know that is because when it amended Title VII in 1972, it indicated that it was merely declaring present law. Well, there are other provisions that apply to some that are applicants and some are just employees too. I'm sorry, Your Honor. The statutes you refer to do make a distinction between employees and applicants. That's correct, but the statute didn't before the amendment, and the Supreme Court had no trouble concluding that both initial employees and incumbent employees applying for promotion and transfer were covered. So while the amendment clarifies, as Congress intended it to in Title VII, it wasn't necessary to reach the conclusion that applicants were covered under this exact same language. And in Smith, the Supreme Court indicated that that reading, that Griggs' treatment of the same language in Title VII's identical provision was the better reading of the text as well as in accord with the purpose of the statute. It's the better reading of the text here too. What if we were to decide sort of in keeping with a, it's not a holding, but a comment that Judge Martin made in her dissent in the Villareal case. She says, 11 judges interpret Section 4A2 in today's ruling. Among the 11 of us, we read the statute to mean at least three different things, and where a statute can be variously interpreted or it's ambiguous, then something happens. So what if we, at the end of the day, thought, well, you can make a sensible argument saying that applicants are not part of 623A2. You can make a sensible argument, as you have, that from a textual standpoint, looking at the statute as a whole, they are. There's the word individual. There's the standardized clause. Where does that leave us? Who wins if it's ambiguous? The plaintiff wins if it's ambiguous, Your Honor, because of the EEOC's regulations. There's a reason that this is a classic case for deference, and that's because the EEOC has authority to substantively regulate under the ADEA. That is not the case under Title VII, by the way, so deference is a much stronger implication under the ADEA, and the regulations apply to any individual, not just current employees, and also the preamble to the regulations make clear that that's intended to cover hiring cases. So if the court concludes that this is an ambiguous statute, then deference is owed to the EEOC's regulations on this. So there's really no way to get to a conclusion that applicants are excluded, except by concluding that there is no way to read this language to encompass applicants. That just doesn't make any sense at all. Counsel, on that point, did the regulation ever go through notice and comment rulemaking? Yes, Your Honor, it did. And when was that, mid-'90s? This regulation was post-Smith, so it would have been in the early 2000s to implement the reasonable factor other than age analysis that the Supreme Court did. So in response to that, it amended the regulations through notice and comment. So that's entirely correct. We still think we have the better of the text as well and that there's every reason to conclude that the language of the statute encompasses applicants as well. I'd like to address for a moment the or otherwise affect his status as an employee language that the 11th Circuit found so significant. Before you move off of this topic, what impact should the concurrence in Smith v. City of Jackson have on us, which was a plurality opinion, where the concurrence said that Section 4A.2, of course, does not apply to applicants for employment. It's only 4A.1 that protects them. You're referring to Justice O'Connor's concurrence, Your Honor? Correct, yes. Well, I don't think that that really has any weight because it didn't prevail. But that's a plurality opinion. That's certainly right, Your Honor, but there is a majority opinion in there because there was a majority of votes on Parts 1, 2, and 4 because Justice Scalia joined them. And so that's why Justice Scalia's concurrence has so much more weight than Justice O'Connor's concurrence. Justice O'Connor's concurrence was not part of any majority opinion. And didn't Justice Scalia say in his concurrence that he substantially agreed with the outcome of Part 3, that he would have done it on a deference basis? It's really his rationale, not the bottom line for Part 3. Yes, that's exactly right. And that's the reason that he concurred was to say that it was appropriate to owe deference to the regulations in this case. And Justice Scalia did address Justice O'Connor's concurrence a bit and essentially explained why it was wrong to address it in that way. But one thing I do want to note is that the majority and the plurality did have that opinion and presumably discussed it with each other about job applicants. And instead of finding that a salient textual difference included between the ADA and Title VII was the inclusion of applicants, the opinion pointed to two textual differences that have nothing to do with applicants and then went on in footnote 8 to cite two hiring cases as appropriate disparate impact cases that the Courts of Appeals had addressed and has treated as valid before the hazing paper decision. So in addition to the fact that actually the Fifth Circuit decision in Smith that went up to the Supreme Court did say that applicants were excluded. So the Supreme Court was on notice that there might be some belief that applicants could be excluded from the statute. It wasn't an issue in the case, so there was no need to rule on it. But it gave some very clear indications that it never considered there to be this divide between external job applicants and current employees that just never is not only not an implication of the decision, but the implication is the exact opposite by virtue of those cases that it cited and not endorsing the view that was before it under Justice O'Connor's opinion. So I would like to address the otherwise clause because I think that it's caused some problems. In addition to noting that, of course, the Griggs Court found no difficulty in concluding that both people entering employment and current employees were covered by the exact same language and didn't trip up on this or otherwise clause at all. There are purely textual reasons to believe that this doesn't exclude and certainly doesn't unambiguously exclude job applicants. First of all, as the Supreme Court recently decided in the inclusive communities case, this or otherwise language expands rather than contracting the coverage of a civil rights statute in a very similar provision and also did some analysis of the ADEA in that case and talked about the Smith decision and pointed out that that specific aspect of the ADEA as well as the Fair Housing Act expanded the coverage of the statute rather than limiting it. But I also want to note that even if the court concludes that this or otherwise affects the status as an employee language is not an alternative, status as an employee doesn't have to be status of a current employee. And in fact, even in the majority opinion of the 11th Circuit that went the other way on this decision. Would you explain that again, status of employee? Say that again. The phrase or otherwise adversely affect the status as an employee doesn't have to be something that only can happen to a current employee. And the reason is because there's nothing that adversely affects status as an employee more than denying status as an employee. And Judge Pryor in the majority opinion in the 11th Circuit pointed out, sort of agreed that denied status as an employee was a reasonable way to talk about hiring but just found that adversely affect meant something else. And I think that it is an evasive and gymnastic interpretation of the text to say that the words denied status as an employee clearly encompass hiring whereas adversely affect status as an employee could not possibly encompass hiring. That finding distinction... I want to go back to Robinson here too because again, we do have former employees who aren't employees anymore but they are somehow still in that, it's a relationship that's being described. Employer-employee as opposed to independent contractors as opposed to next door neighbors as opposed to anybody else. That's exactly right. I'm sorry. No, I'm just thinking of other examples. Yes, it's in the employment context. And that's why employee is a relevant word. But that's exactly right. Another way to reach this conclusion that applicants are included and that external applicants and not just internal applicants for employment are included is that employee, as the court said in Robinson, has no temporal qualifier. And that could include prospective as well as former employees. And even in that decision, the court explained that that was, that reading the statute to encompass former employees in the retaliation provision was in line with the purpose of the statute. And that's exactly the case here. The court would... Congress could have drafted it, make it clearer, couldn't they? Yes, Your Honor. Congress certainly could have been clearer. But the fact that Congress could have done a more precise or better job here is not the question. The question... I'm sorry, Your Honor. The question is left to us, then, to make that determination. Yes, that's exactly right. I think the important thing is not only is the interpretation that includes applicants the better reading of any aspect of this text, and particularly, I also want to point, we haven't talked about it yet, but the reference to denial of employment opportunities, which is a very clear reference to hiring and in line with Congress's purpose. As the Supreme Court has said it was to prohibit age discrimination in hiring. That is the better reading of the statute. But if the court concludes that it's not the only reasonable one, then it absolutely should defer to the EEOC's conclusion that this part does cover applicants. I'll take my five minutes for rebuttal. Thank you. All right. Thank you very much. Mr. Schenberg. May it please the Court. The key to this case is that Congress knows how to cover applicants, and it's not cryptic about it. It did so multiple times in the ADEA with clear and direct language in the surrounding sections, but it did not do so in Section 4A2. Instead, drawing a line that it often draws and that here allows employers to continue traditional practices, it covered employees but not applicants in Section 4A2. Of course, it doesn't use the word applicant in A1 either. No, but it directly refers to hiring. It uses direct language. And I'm saying here we have deprive any individual of employment opportunities. That doesn't say employees. Why can't we make the same argument you're making except the other way around? Say if they meant only employees in terms of, let's say, internal promotions or favorable assignments geographically or something, they could have said employee, but instead they chose to say deprive any individual of employment opportunities. They did. Very broad language. They did. The word employee is defined in the statute, and it means current employee. The word individual. So Robinson is wrongly decided? No. The word individual is not defined in the statute, and therefore it takes its meaning from the context in which it's used. So that in 4C2, which I think is the labor provision, it refers to individuals, but it also refers to applicants and employees. So it is a natural reading to say that individuals means an individual employee or applicant, but that's not the case in 4A2. It doesn't make any sense in light of the structure of this statute. If we're really going to be textual literalists, and I'll be literal along with the best of them, we have employees used, we have the word individual used, we have the word employee or employees used twice, and we have the word individual or individuals used twice in 623A2. And I'm having trouble with two things. One, the idea of depriving any individual of employment opportunities excludes the biggest set of employment opportunities of all, jobs. And secondly, when you go to the findings of Congress for the statute, Congress is concerned and 621A1 says the Congress hereby finds and declares that blah, blah, blah in the face of all sorts of things. Older workers find themselves disadvantaged in their efforts to retain employment and especially to regain employment when displaced from jobs. So we have that in the statute. So we don't need to go digging around in Senate reports or House reports. And so when I see that, and then I see two sections later, deprive any individual of employment opportunities, how do you exclude job applicants? Well, I'm not excluding job applicants from the ADA. And I'm not excluding them anywhere. Congress excluded them from Section 4A2. No, you're just saying that. I'm asking how can you say that in light of 621A1 and the language? I'd like to answer the question, certainly. But don't answer it just by restating your position. Well, I'm going to answer it this way. Hiring was a focus. There's no question that hiring is a focus. Nobody is saying hiring isn't a focus. To me, that only shines a light brighter on the fact that Congress specifically referred to applicants in numerous other sections, but it didn't do so in 4A2. So how do you deal with Griggs? Easily, Your Honor. Griggs involved four incumbent employees before the Supreme Court. That is clear from the opinion in Griggs. It's clear from the Fourth Circuit opinion on remand. It's clear from the district court's injunction on remand. It's clear from the EEOC's amicus brief in that case. And it's clear from the petitioner's own brief to the Supreme Court. It only involved incumbent employees. The petitioner's own brief says this case is not about tests that apply to new employees. So Griggs is about current employees. I never understood Griggs that way. Never. Griggs is about current employees, and so is Smith. So all this talk about Smith and Griggs somehow has anything to do with you. Your view that subsequent Supreme Court decisions in their discussion of Griggs don't refer to its holding as applying to hiring criteria and to job applicants? Immediately after Griggs, Title VII was amended. So any cases that are talking about that issue after Griggs are talking about the amended version of the statute. Not if they're describing Griggs. They may be citing Griggs for the proposition. Well, they are describing Griggs as it stands because Griggs, of course, established that there is disparate impact liability under Title VII, and Smith established that there is disparate impact liability under the ADEA. But none of that has anything to do with the issue before this court, which was whether or not Section 4A.2 covers applicants or only current employees. It has everything to do with the issue before. Here's the problem. If you have a disparate impact theory that reads out the word individual of the statute or idiosyncratically interprets it, you might as well throw the Age Discrimination and Employment Act out the window because every employer will just say, we don't want to hire anybody who is more than three years out of college. Maybe there's the occasional grandmother who went to college in her 60s, but on the whole and by and large, it will just grandfather out. The existing employees will move on and there won't be any age law anymore. Well, Your Honor, I would like to speak to, I believe you may have raised the Wirtz Report in one of your earlier questions. The Wirtz Report itself, upon which all of this is supposed that the ADEA is largely based. I actually haven't. I mean, you're certainly free to talk about it. Sure. Well, the Wirtz Report itself, of course, was concerned with hiring, and Congress was concerned with hiring, which, as I said, only shines a light on the fact that they didn't mention it in Section 482. But the Wirtz Report also was only interested in facial discrimination. It was not interested in facially neutral policies, which is, of course, a synonym for disparate impact. And so it actually, with regards to facially neutral policies, recommended no legislative action. What it also said was that it recognized that external hiring often means entry-level positions and that that often favors younger workers, but that those are often accompanied by promotion from within policies that often favor older workers. And the Wirtz Report recommended no changes with regard to what it called these institutional arrangements. How does the Wirtz Report help us understand what it means to deprive an individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's age? I'm not saying that it does, except for the fact that it recommended—it focused on hiring, and there are provisions that protect hiring of external applicants. It didn't have anything to say about disparate impact, and the disparate impact provision doesn't have anything to say about hiring. So it is something of a match there, Your Honor. So the problem is that there are many things that are highly correlated with age that are not aged directly, whether it's number of years of experience in a job, whether it's number of years since obtaining some kind of academic or professional license or degree. Maybe you say we're not going to hire anybody who has gray hair. I mean, there are some young people who have gray hair, but they tend to be older people, as you can see from looking here. So the idea of the disparate impact, the limited disparate impact provision in the ADEA, the one that's limited by reasonable factors other than age, is that we don't want to keep older workers out of the market based on these highly correlated things unless the employer has a decent reason for it. Well, I think that Congress wrote what it wrote, and the provision— That's what we're trying to figure out. That doesn't help me, actually. Well, the provision, first of all, the plain text of Section 482 needs to be determined, not only by looking at 482, but of course at the statute— How can it be absolutely plain to your opponent and absolutely plain to you and be completely 180 degrees separate? Well, I will have to say that my opponent started with a list of Supreme Court cases that I'm afraid don't really touch on this issue. Those Supreme Court cases, as I said, are all dealing with incumbent employees. The point that Smith, if anything, actually supports my position. The Supreme Court, I think, also indicated that it thinks it's quite clear that 482 does not cover applicants for employment because that's what Justice O'Connor, a judge joined by Justice— A couple of people. She didn't speak for the court on that point. But no one on the court disagreed with her, and it was a healthy exchange. Why would they bother? Do you think we write responses to every concurrence in dissent? No. No, I don't, which, of course, speaks to the fact that that explains why Griggs used very loose language as well, which, by the way, the language in Griggs is not only loose. It's not even dictum. Dictum, as this Court, of course, knows, is when a judge opines upon a rule of law that's not essential to the holding, but this isn't even dictum because nobody was opining about it. Griggs is just, unfortunately, loose language. So the court didn't mean it. They didn't mean it. Excuse me, Judge Hamilton. Chief Justice Berger didn't mean it when he said this covers applicants? The court, unfortunately, did not distinguish between— The court did not distinguish between external applicants and internal applicants. It didn't— Let's talk about that distinction, Mr. Schenberg, for just a moment. Let me just ask you the question I asked you some months ago and addressed in the panel opinion, and that is, for those of us who think that if statutes are at least a little ambiguous, purpose might be consulted usefully in interpreting that language. Take the hypothetical of both Mr. Kleber and an internal applicant with comparable credentials applying for this job. As I understand it, your position leaves the employer's policy arguably illegal as applied to the internal applicant, but not to the outside applicant, correct? That's fair. Okay. Why on earth should this statute be interpreted to produce that very odd result in which the practice is illegal as applied to some applicants, but not others? I will start by saying that it should be interpreted that way because that's how Congress wrote it, but I will, of course, address your question. Robinson tells us that Congress doesn't have to be perfect. Well, I will say about Robinson, as long as you brought it up again, and I meant to get to it earlier, that Robinson is about a case where the cause of action arises out of these people's employment relationship. It is about former employees, yes, but they were at least employees at some point, and the cause arises out of that relationship. So back to why this makes sense. Sure, back to—absolutely. First, the exclusion of applicants from Section 482 allows employers to continue traditional and efficient hiring practices such as campus recruiting and internships— But not as applied to internal transfers. Right, and I will address that specifically because, first of all, the Wirtz Report recognizes this situation and is okay with it, and Congress based the ADEA on the Wirtz Report, at least in part, and it will also say that there are built-in efficiencies for internal transfer and promotion. So when you're hiring externally, you have a potential universe of people, and so it makes sense that Congress permitted traditional employee practices of looking for entry-level workers where they're most likely to be found, of hiring for entry-level positions from a pool composed of people with those kinds of qualifications. Internal applicants have other built-in efficiencies. We're not talking here about an entry-level position. We're talking about— Well, it's an entry-level position, and that— There's a required minimum level of experience and a required maximum, right? It's an entry-level position for that legal department within CARE Fusion. It is an entry-level position. But if I can continue, internal applicants have built-in efficiencies, and those built-in efficiencies are that there are far fewer of them, and they're known candidates because they're internal to the company. So I would also say, of course, as I did to you during the panel discussion, that this is a line that Congress draws, and it draws regularly. The most illustrative example is 11 U.S.C. 525B, where Congress very broadly prohibited private discrimination with words that said, private employers cannot discriminate with respect to employment against any individual, end quote, who's been involved in a bankruptcy. And so unsuccessful applicants for employment have sued under that provision and said, well, I'm an individual, and I was denied employment. That's with respect to my employment, and the courts have said no. And the reason why the courts have said no is telling here. There's an adjacent provision that applies to public employers, and that provision specifically addresses denying employment. And the courts said that difference in wording has to be given meaning. And that's also true here. There's another reason why it's not surprising that Congress excluded applicants from Section 482. The ADEA does not purport to provide full coverage for age discrimination. It draws lots of lines itself. But we're not talking about the 40 and above and all of that. We're focusing. I just don't find that helpful. Of course there are lines, but when you're arguing for an interpretation that flatly goes against the congressional statement of findings and purpose, I think you have a significant burden. I would say this. We look at Section 482 and its plain meaning by putting it in the context of the statute as a whole. But wait a minute. I also wanted to say, I have to go back to Griggs here. We were just reminded in the last oral argument that when the Supreme Court speaks, they expect lower courts to follow their guidance. And the Supreme Court has spoken in Griggs, and for a lower court to take a work-to-rule, minute distinction approach to one of the Supreme Court decisions invites a per curiam reversal. Well, as I said, Griggs only applies in Title VII cases, and it only applies to disparate impact. And if Griggs says what my friend on the other side says it says, then Congress had no reason to add applicants when it amended Title VII a year later. That goes against the presumption. Why do you assume that Congress is always changing the statute when, in fact, they said they weren't? I will be happy to get to that as well. First of all, the presumption, obviously, is that when Congress enacts an amendment, it does so to enact a substantive change in the law. That's the presumption. Now, as to this notion that this amendment was only declarative of existing law, I want to make a couple of points about that. First of all, for those who think that legislative history is at all persuasive in terms of interpreting the words that Congress wrote, even if they might otherwise be clear, that's because, I think, they're supposed to shed some light on what the members of Congress understood the language to be when they were enacting it. This legislative history that we've been told about, it's not legislative history from when the ADEA was enacted. It's not even legislative history from when the Title VII mirror provision was enacted. It's legislative history that, according to my opponent's description, declares what the 1972- You looked at it, I assume. It's the 1972 Congress supposedly declaring what the 1964 Congress meant. That's post- They're saying we accept the Supreme Court's interpretation of our statute. It doesn't say that, Your Honor. With all due respect, it doesn't say that. First of all, the conference report doesn't say anything about declaring existing law, and the conference report, the House bill that went to the conference committee and is what both houses of Congress eventually voted on, it doesn't say anything about declaring any existing law. It just has the amendment in there with no further explanation. There was a report that did say it was declarative of existing law. The report also didn't give us any idea what existing law supposedly is being declared. Now, what we have is Senator Williams, first he introduces to the Senate the conference report bill that's reprinted elsewhere in the congressional record. He introduces that, and then he says, I've got a personal statement that I've prepared along with Senator Javits, and here's my personal statement I'd like to submit it for the record. That's what appears a section-by-section analysis, and there it does say that it's merely declarative of existing law. But it doesn't say Griggs. It cites three other cases, three cases that don't even have anything to do with disparate impact. So the notion that somehow this is declaring existing law is just false. There was a House report that did talk about Griggs, but I think this cuts in my favor, Your Honors. The House report talks about Griggs, but not in the section talking about the 70382 amendment, not in the part where they added applicants. It doesn't say anything about Griggs there. It talks about Griggs in different parts, different amendments, different parts of that House report. So I don't think it's a clarity. I think it would be best to just go back to the statement of purpose that is in the ADEA statute and note that Congress chose different words in A2 to describe people who are seeking employment opportunities, deprived any individual of employment opportunities, you know, and call it a day. Well, I mean, I would call it a day at this. Congress wrote the statute the way it wrote it. In the context, it's clear that employee does not mean employee. I'm sorry. I didn't mean to talk over you. I was going to say it makes sense in some of the other sections that you're looking to answer. I said I get a chance to listen to the answer. Of course. You have not completed the answer. What I was going to say was employee cannot mean applicant because that would mean that the express reference to applicants for employment and all those other provisions was unnecessary and mere surplusage. I will say this, of course. We interpret the section in light of the entire structure of the ADEA. We interpret it that we assume that Congress meant what it wrote and that it wrote what it meant. But even if it was just a drafting error, the Supreme Court has said that it's beyond our province to rescue Congress from its drafting errors and to provide for what we might think is the preferred result. The text is the text of the statute. I would like to also address the reasonable factor other than age defense. Of course, that is a defense to a disparate impact claim. But the fact that there's a defense to a disparate impact claim doesn't tell us anything about who has a disparate impact claim in the first place. And to do so, to create, to expand the definition of proper plaintiffs here would be particularly troubling because it would discourage employers from engaging in traditional hiring and recruiting practices, internships and clerkships that are often based and connected directly to colleges and graduate schools. Your opponent says that this parade of horribles has not happened in the states that have laws already in this area. I can't comment on what the state laws are in other places, but I do think this, it would be a very reasonable choice for an employer to say, it's all well and good that counsel said, we don't think anybody's going to sue when it's a reasonable practice, but when I'm not doing appellate law. You're not answering the question. Suppose California already covers this. It's a big state. Is California shut down because of it? Do employers have no ability to go to college? I don't know whether California, obviously California has not shut down. I'm trying to make an argument that this is, as a practical matter, a bad thing. That's a fine argument to make, but I think at that point, at the practical level, you have to see how big a problem it is. Well, I will say that when I'm not practicing appellate law, I'm a class action lawyer, and my experience with the plaintiffs bar, who may not all be as responsible as my opponent today, but if we say that campus recruiting, which is very likely to have a disparate impact in favor of younger workers, I mean there's no two ways about it. There aren't that many people who are over 40 going to college or even graduate school, is going to have a disparate impact, and it's all well and good to say that many plaintiffs lawyers wouldn't bother to sue, but some will, and it will mean expensive, extensive litigation with expensive and extensive discovery, and that will likely happen before the employer ever gets a chance to extricate itself from a lawsuit it should have never been in. Now that argument struck me. The Chamber of Commerce made that argument as a plea to repeal any section of the law that covers disparate impact for the Supreme Court to overrule Griggs. Some people think that would be a good idea, but surely you're not asking us to do that. I am very focused on Section 482, Your Honor, and the fact that it doesn't include applicants. I would also like to just address the EEOC deference issue, because the EEOC is here entitled to exactly no deference. Even though it was a notice and comment rulemaking regulation. But here's the thing. The regulation that was enacted was not interpreting Section 482. It was interpreting the reasonable factor other than age defense. And it may have used the word applicant in there, but it never, in the notice and comment making period, never did anybody say, we are enacting a rule that's going to affect whether applicants are included in Section 482 or not. The examples that they use in the regulation as it stands today, I believe, some of them talk about individuals, which of course paraphrases the statute and adds nothing and therefore is entitled to no deference. Some of them talk about employees. So there's nothing in those that talk about applicants. So this would be a very backdoor way of allowing the EEOC to express an opinion about which it's been very inconsistent throughout its history. The EEOC before Smith said 481 covers disparate impact. Well, then it told this court in Francis Parker, it said it's of no consequence that 482 excludes applicants. Of course, it had to change gears right after Smith. But the first time it ever took the position that the RFOA regulation has anything to say about whether applicants are covered in 482 is in its amicus brief in Villareal. And clearly positions taken for the purpose of litigation are not entitled to any deference. No analysis, just the statement. The EEOC is not entitled to any deference. And the reference to Justice Scalia saying this is a perfect case for deference in Smith, this wasn't the issue in Smith. The issue in Smith is whether there was disparate impact at all. And again, to the extent that Smith says anything about this issue, it's Justice O'Connor and Kennedy and Justice Thomas saying, of course, their applicants are not covered by 482 and not a single justice disagreed. In fact, footnote six of the plurality opinion summarizes 482 to read pretty much that way. Could I come back to Griggs? Of course. If I understand Griggs, the court relied entirely on section 2000E-2A2. And it reads almost identically to section 623A2. Yes, Your Honor. It did not rely on section 620, 2000E-2A. You get the idea. I think so. Sub-A1. Sub-A1 and Sub-A2 are pretty much the same in Title VII and the ADEA. As originally drafted, yes. And we know that Griggs relied on Sub-2 to include applicants. No, we don't know that. I disagree with that. That's what the justices did. Otherwise, the opinion is incoherent. Far be it from me to accuse the justices of being incoherent. I'm sometimes willing to accuse them of being wrong, but we have to follow them. But incoherent? How does one avoid the effect of Griggs? Well, I would say Griggs was wrong. Sure. One might say Smith was wrong to distinguish A1 from A2. One might say Smith was wrong to read disparate impact into the ADEA at all. But all of those things actually happened. And we're an inferior court. And we're supposed to be following them. How do you get it? I still don't see how you can get around Griggs. I will answer your question on Griggs in several ways. First of all, I am adamant in my belief that the Griggs case only involved the four incumbent employees who were before it. That is clear from the opinion itself. It's clear from the Fourth Circuit's opinion on remand, from the district court's injunction on remand. It's clear from the petitioner's brief. It's clear from the EEOC's amicus brief. So let me ask you this question. Suppose, as has happened, the Supreme Court has issued a decision saying that in general there are no private rights of action under spending clause legislation. And maybe they have one piece of spending clause legislation in front of them. And then a new case comes along where a different piece of spending clause legislation is raised. Do you think the court in case number two should say, oh, well, you know, they weren't talking about our statute. So we're going to go ahead and infer a private right of action. I don't say that for every case, but I think in – You're just making a factual distinction as you see it. Well, I am making a factual distinction because the issue that's before your honors was not before the Griggs court. And that's the reason why it used loose language. And this court, in a rural loan, cautioned against wrenching general language from an opinion out of the context in which that opinion was issued. But I will also say this, as I mentioned – Well, because it doesn't distinguish between internal and external applicants. And the plaintiff standing before the court were all internal applicants. So, yes, I think that it used loose language. Plaintiff's reading of Griggs would mean the Title VII amendment was unnecessary. And on top of all that, Congress has shown through amendments to both Title VII and the ADEA that the two statutes are simply different. Congress amended Title VII to add applicants, but it didn't do that in the ADEA. Congress amended the ADEA specifically to add coverage for federal employees and applicants for federal employment. But it still made no change to 4A2. That's what it says. I will also say that in the Gross case, the Supreme Court was faced with a similar situation. The Supreme Court was interpreting the but-for language in the ADEA. And the dissent said, you have to interpret the but-for language in the ADEA exactly the way we did for the Title VII case of Price Waterhouse. And the majority in Gross said, no, we don't, because there was an intervening amendment to Title VII that was specifically on point. And that's the same here. So even if Griggs applied to applicants, which it did not, but even if it did, ADEA cases do not have to be interpreted in light of prior Title VII precedent when there's been an intervening change to the statute. There were some hypotheticals mentioned in the panel opinion that I just want to address. Courts can avoid a lot of issues that arise on the margins if Congress had only drawn those margins wider. You're asking for a different Congress than the one that we've been living with, I think. Congress writes what they write. And it's very frequently the case. I couldn't agree more. Congress writes what it writes. And the court's job is to apply what it's written and not to substitute what it thinks maybe Congress ought to have written. And also not to say, oh, you could probably, I bet if I gave you 10 statutes, you could sit down and write them better, all 10 of them. But that's not fair either to ask of Congress. I don't know if I could do it, Your Honor. I'm sure Your Honor could do it. I think you could. But my point is this. My point is that the- Well, and drafted the Uniform Commercial Code. Maybe it's full of problems. This case, many of my questions today have been about the fact that it wasn't Congress focused on hiring. It wasn't Congress focused on hiring. Yes, it was in all these other provisions. And if it was focused so much on hiring in the disparate impact provision, it would have said so. I see that I am about out of time here, and I thank the Court for its time this morning. Thank you very much. What you mean you couldn't say applicant means employee, right? I'm sorry, Your Honor. I say you could not say in common sense applicant means employee. I would think that it would be hard to do that. All right. Ms. Smith, anything further? Yes, thank you. I'd just like to address a couple of things that my friend said. I'd really like to start with the Wirtz Report. And I haven't focused as much on legislative history today because I don't think that you need to get there, and I think that to the extent that you do, you can rely on what the Supreme Court has said about the legislative history rather than delving into it yourselves. But to the extent that my friend has said that the Wirtz Report only refers to things that are intentionally discriminatory, that's simply not true. The Wirtz Report is rife with examples of limitations on employment like unnecessary degrees and testing requirements, very similar to the ones addressed in Griggs, and prescient of that, and Smith talked about that as well. So it's just not true to say that the Wirtz Report was only concerned with intentional discrimination in hiring. And also I want to note that the Supreme Court has also said that Congress wanted to eradicate the last vestiges of discrimination under the ADEA. It really doesn't make sense to limit Congress's purpose to intentional discrimination in hiring if the court is concerned about Congress's purpose. Second of all, I want to address my friend's statement about traditional practices. It doesn't make sense to say that practices are lawful because they are traditional. That is not how civil rights statutes work, and it never has been, because before Title VII, it was certainly traditional to exclude black employees, to segregate employees, and to do all kinds of things that we now know are not lawful. So it doesn't make sense to say that employers don't have to go to court to say that their practices are reasonable and to explain why, even in a very basic way, as the Supreme Court has said it must, just because they have traditionally Just a minute. Supposing a prospective employer doesn't say that they exclude this, but really intend to. Is there a violation of any law or any rule? If an employer says that they didn't do what but intend to, Your Honor? I have no intention of hiring anybody over the age of 45. By the way, I will yield to nobody in my concern about older people. But supposing they didn't say that they were only looking for people under a certain age, but went ahead and did it that way. Who's benefited? You're wasting the time of the applicant, you're wasting the time of the firm, and so on. And they may have a perfectly legitimate reason for doing it, but they just didn't say in their advertisement for employment that they were excluding other people. Doesn't it seem to you to be, as opposed to doing something wrong, tell them, you know, you're not going to be considered, why the hell bother? And you haven't violated any rule if you just pick your own lawyer, have you? I'm sorry, Your Honor, I'm not sure I understand the question, but I It's fairly understandable. What you're kicking about is they said they would only hire a particular group. Yes. And that saved everybody a lot of time. Because they weren't going to have an inundation of people applying for a job that they weren't going to hire anyway. So you say, don't bother. And you're saying they didn't, their mistake was putting it in the ad. If they didn't do it, you would never know, would you, what they were doing. I think I understand. Let me try to address that. It is possible What's wrong with it? It is possible that an employer could go to court and say, the reason that we put that limit is because nobody who had substantially more experience than this would be happy in the job. And they could try to convince the court that that was reasonable. And that would be fine. I also ask you, I mean, I think what Judge Bauer is putting his finger on is that sometimes people are very upfront, you know, in the job applications with their policy. Sometimes maybe they're just keeping it to themselves. But it's certainly possible, and we've had cases where there could be a question of fact about what the policy actually is. It could be very hard for a plaintiff to show such a hidden policy. But I can think of cases in the Title VII area, at least, where the question about what is the policy, in fact, has been litigated. Yes, Your Honor. And I'm sorry if I didn't address that, Your Honor, as well. That's exactly right. And in pleading a desperate impact case, of course, a plaintiff has to point with specificity to the policy that they're talking about. So, you know, to the extent that an employer can keep its policies hidden and then not be subject to lawsuits, that is one way that an employer can avoid these claims. But to say that it just makes it easier to everyone to make it clear and put it right up front, it really doesn't answer the question. Because if that policy then, as a matter of fact, screens out older workers and does so for no reasonable purpose, then that's what's against the law. And so making it clear certainly does—it would probably deter a lot of applicants. It did not deter Mr. Cleburne because it looked like an interesting position to him and was described as a senior counsel position and had all kinds of descriptions of why it would be an interesting job. But making discrimination clearer is a more efficient way to discriminate, but it's not really a more efficient way to hire. Employers are free to describe the jobs that they're talking about in terms that make it clear what they involve, as well. I think this is something that gets overlooked a lot. It's fairly easy to look at a job description and see if it's not the kind of job that would interest you at your experience level. If it describes—even as an entry-level position, that describes the position, not the traits of the applicants that you're looking for and limiting them in a way that unduly screens out older workers. So it really is not an impractical conclusion to cover applicants here. Okay. I think you need to wrap up. Thank you, Your Honor. All right. Thank you very much. Thanks as well to Mr. Shenberg. The court will take the case under advisement and we'll be in recess.